Martin H. **TANKLEFF**, Plaintiff,

v.

D.A. **SENKOWSKI**, et al., Defendants.

No. 96–CV–0507 (TCP).

United States District Court,
E.D. New York.

Feb. 28, 1997.

Warren L. Feldman, Rogers & Wells, New York City, for Petitioner.

---

### MEMORANDUM AND ORDER

PLATT, District Judge.

With the benefit of "Monday morning quarterbacking" and able lawyers associated with experienced, large law firms, it is not difficult for any criminal defendant in a "high profile" case to magnify the significance and "importance" of one or more "close calls" in pre-trial and trial proceedings and make respectable arguments as to their constitutional validity in a habeas corpus (post jury trial) proceeding which might find acceptability in arenas removed from reality but not otherwise.

Defendant did so here recently and this Court gave defendants pleas in depth, careful and thoughtful consideration notwithstanding the fact that the seven highly esteemed members of our State's Court of Appeals, three highly esteemed members of the our Appellate Division, Second Department and a very respected member of the Suffolk County Supreme Court had carefully reviewed, considered and denied defendant's motions.

As pointed out in our Memorandum and Order dated January 29, 1997, the factual findings of our State courts are "presumed to be correct."

The State Supreme Court Justice (Tisch, J.) not only was in the best position to evaluate the testimony and to determine the "custodial" question, but also, most importantly, was in the best position to hold that the defendant's statements to the police were voluntary, reliable and corroborated. These were not ordinary murders; they were beatings and stabbings to death of a mother (matricide) and father (patricide), who the police found on their arrival at the scene to be in the presence of their son (the defendant) who was soiled with blood.

Normal behavior on the part of the son would not follow the pattern that occurred here culminating in a full confession after *Miranda* warnings.

Appropriate professional behavior on the part of the police, on the other hand, would have followed the practice that occurred here. There was no leap to a premature conclusion, there was an opportunity given to a possible suspect away from the highly charged, stressful scene to offer whatever explanation he wished to give and there was a test made of his explanation which revealed to the son the futility of his position. Thereafter, the arrest was made, warnings were given and a voluntary confession was given

by the son which was corroborated by the scene at the crime itself.

Moreover, there is nothing to show that (i) the failure to give a Batson hearing with respect to the peremptory challenges, (ii) the failure to furnish information allegedly required under *Brady v. Maryland*, 373 U.S. 83, 85, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as to prior conduct of the person whose only accuser was the defendant prior to his voluntary confession or (iii) the prosecutor's comments about the failure to call a sister who might normally have been expected to be supportive of the defendant as one who would not kill their mother and father, would have affected the jury's verdict in this case.

The only one of these three grounds that falls squarely within the "close call" category is whether the failure of the police to turn over to the defense the so-called Hell's Angels information that some ten years before the trial Jerry Steuerman (who defendant said was the killer in this case) had hired Hell's Angels to beat up labor union workers who were harming his business. Mr. Steuerman was called as a Government witness who did not implicate the defendant as the perpetrator but did testify he himself "would never do anything like that." *Arguably*, hiring the Angels to beat up people was "[something] like that" and, hence, impeachable material both as to Mr. Steuerman and the adequacy of Detective McCready's investigation but *equally arguably* the hiring of someone to commit violent acts (a cowardly act) was totally inconsistent (i.e. not a similar act) with the personal cold blooded killing of the defendant's parents.

On balance, it is difficult to say with any degree of certainty that this information would have affected the jury's verdict in this case with the confession by this sophisticated above average high school defendant and his abnormal behavior and responses to the police prior to his arrest. The State Court Judges whose findings "are presumed to be correct" said "no" and if there is any meaning to the presumption this Court should and does agree.

It should be quite clear from the foregoing that this Court feels that the three State Courts should be sustained and that there are, at best, arguments that there is a substantial basis for granting a certificate of appealability. Nonetheless, given the importance of the case and extent of the sentence which was virtually mandated by the verdict, defendant's motion for such a certificate is hereby, granted.

SO ORDERED.